

**FILED**

Jun 20 2017, 8:20 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Katherine J. Noel
Jacob D. Winkler
Noel Law
Kokomo, Indiana

ATTORNEYS FOR APPELLEES

Nicholas C. Deets
Hovde Dassow & Deets LLC
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE

Robert W. Johnson
Johnson Jensen LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Angel Shores Mobile Home Park, Inc., <br><br> *Appellant-Defendant,* <br><br> v. <br><br> John Crays and Megan Crays, <br><br> *Appellees-Plaintiffs* | June 20, 2017 <br><br> Court of Appeals Case No. 79A02-1605-CT-1106 <br><br> Appeal from the Tippecanoe Superior Court <br><br> The Honorable Randy J. Williams, Judge <br><br> Trial Court Cause No. 79D01-1101-CT-10 |

**May, Judge.**

Angel Shores Mobile Home Park, Inc. ("Angel Shores") appeals the trial court's award of attorney's fees and litigation expenses[1] to John and Megan Crays ("the Crays"). Angel Shores presents multiple issues for our consideration. Consolidated and restated they are:

1. Whether the trial court erred when it awarded the Crays attorney's fees under the Child Wrongful Death Statute ("CWDS");

2. Whether the trial court erred when it awarded the Crays litigation expenses under the CWDS; and

3. Whether the trial court erred when it did not reduce the amount of litigation expenses due to the Crays based on the percentage of Angel Shores' fault.

The Crays cross-appeal, arguing Angel Shores waived its appeal of these issues as part of the parties' Agreed Stipulation.[2] We affirm.

# Facts and Procedural History[3]

---

[1] The words "costs" and "expenses" are used interchangeably throughout the briefs, appendix, and cases. For consistency, we will use the word "expenses." As we conclude *infra* the terms are quite different, and we look to the legislature for clarification.

[2] The Indiana Trial Lawyers Association ("ITLA") filed an amicus brief arguing attorney's fees and litigation expenses are recoverable under the CWDS and litigation expenses are not reduced by comparative fault.

[3] We held oral argument on this matter on February 16, 2017, at the Indiana Statehouse. We thank counsel for their advocacy.

[2] On July 25, 2010, the Crays' thirteen-year-old son, Zachary, was electrocuted and killed while swimming at the home of Bryan and Donna Wagner ("the Wagners"), who have a lease agreement with Angel Shores. On January 28, 2011, the Crays filed a wrongful death action under the CWDS, Indiana Code Section 34-23-2-1, against the Wagners and Angel Shores. On June 28, 2012, counsel for Angel Shores sent counsel for the Crays a letter stating, "I am in agreement with your suggestion that we allow the Judge to determine attorney fees and expenses after trial." (Appellant's App. Vol. II at 74.) On September 5, 2013, the Crays and the Wagners reached a settlement after mediation. After the settlement, Angel Shores named the Wagners as non-party defendants in the remaining action between the Crays and Angel Shores.

[3] On March 3, 2014, a week before the jury trial commenced, the Crays and Angel Shores entered into an Agreed Stipulation, that had the following terms:

> 1. The case will be tried under a $200,000/$900,000 high-low agreement.
>
> 2. [Angel Shores'] counsel will deliver to [the Crays'] counsel a check in the amount of $200,000.00 prior to the beginning of trial, and said amount will act as a credit against any amount [Angel Shores] would owe pursuant to a verdict/judgment. This payment will not have a claw-back provision; the $200,000.00 will be retained by [the Crays] even if the verdict for [the Crays] is for less or zero.
>
> 3. [Angel Shores'] maximum exposure at trial will be a total of $900,000 (or an additional $700,000). A verdict in excess of $900,000 will be entered as the judgment but will not be payable

to [the Crays]. Upon payment of the maximum amount owed under this agreement, [the Crays] will file a satisfaction of judgment.

4. The trial verdict will be final. Neither side will have the right to file a motion for a new trial, a motion to correct errors, a motion for additur/remitter, or to appeal.

(*Id*. at 64-5.) The jury trial began on March 10, 2014, and the jury returned a verdict on March 13, 2014:

We, the Jury assign the following percentages of fault: Angel Shores Mobile Home Park, Inc., 5% and Bryan Wagner 95%. We also decide that the total amount of damages the Plaintiffs, John Crays and Megan Crays, are entitled to recover without considering the fault percentages, is $3,000,000.00. We, the jury, now decide in favor of Plaintiffs John Crays and Megan Crays and assess damages against the Defendant, Angel Shores Mobile Home Park, Inc., as follows:

Total Damages:                                        $3,000,000.00

Defendant Angel Shores Mobile Home Park's Percentage of Fault is 5%.

Plaintiff's Verdict Amount:                        $150,000.00

(*Id*. at 25.)

[4]     On April 16, 2014, the Crays filed their motion for award of attorney's fees and litigation expenses. After extensive briefing on the issue, the trial court held a hearing regarding the Crays' motion on December 22, 2015, and took the

matter under advisement. On February 16, 2016, the trial court ordered Angel Shores to pay the Crays' attorney's fees and litigation expenses, stating:

> The matter having come before the Court on [the Crays'] Motion for Attorney Fees and Costs, the Court hereby finds that these elements of damages are recoverable pursuant to the Child Wrongful Death Statute ("CWDS"), Ind. Code 34-23-2-1*, SCI Propane v. The Estate of Frederick*, Cause # 55S04-1508-PL-501; *McCabe v. Ind. Dept. Of Insurance*, 949 N.E.2d 816 (Ind. 2001); and *Hematology and Oncology of Ind. P.C. v. Fruits*, 950 N.E.2d 294 (Ind. 2011). The Court awards [the Crays] the sum of $60,000.00 for attorney fees and $72,864.85 for litigation costs. These amounts are added to the jury's verdict of $150,000 for a total judgment of $282,864.85. Pursuant to the parties [sic] Agreed Stipulation, the amount owed by [Angel Shores] shall be reduced by the advance payment of $200,000 made prior to trial.

(*Id*. at 18.)

[5] On March 7, 2016, Angel Shores filed a motion to correct error, which was deemed denied pursuant to Indiana Trial Rule 53.3[4] on April 21, 2016. On May 16, 2016, Angel Shores filed this appeal. On June 24, 2016, the Crays filed a motion to enforce settlement agreement, dismiss appeal, and remand to

---

[4] Indiana Trial Rule 53.3 provides:

> In the event a court fails for forty-five (45) days to set a Motion to Correct Error for hearing, or fails to rule on a Motion to Correct Error within thirty (30) days after it was heard or forty-five (45) days after it was filed, if no hearing is required, the pending Motion to Correct Error shall be deemed denied.

the trial court, arguing, in part, the parties' Agreed Stipulation barred Angel Shores' appeal.  On August 2, 2016, our Court denied the Crays' motions.

# Discussion and Decision

## I. Agreed Stipulation

[6] On cross-appeal, the Crays argue the parties' Agreed Stipulation precludes all issues Angel Shores presents on appeal and thus the appeal should be dismissed.  Our standard of review for settlement agreements is well-established:

> Settlement agreements are governed by the same general principles of contract law as any other agreement.  The interpretation and construction of a contract is a function for the courts.  If the contract language is unambiguous and the intent of the parties is discernible from the written contract, the court is to give effect to the terms of the contract.  A contract is ambiguous if a reasonable person would find the contract subject to more than one interpretation; however, the terms of a contract are not ambiguous merely because the parties disagree as to their interpretation.  When the contract terms are clear and unambiguous, the terms are conclusive and we do not construe the contract or look to extrinsic evidence, but will merely apply the contractual provisions.

*Fackler v. Powell*, 891 N.E.2d 1091, 1095-6 (Ind. Ct. App. 2008) (internal citations omitted), *trans. denied*.  The relevant clause in the parties' Agreed Stipulation states: "The trial verdict will be final.  Neither side will have the

right to file a motion for a new trial, a motion to correct errors, a motion for additur/remitter [sic], or to appeal." (Appellant's App. Vol. II at 64-5.)

[7] The Crays argue the language of the Agreed Stipulation "is unambiguous that neither side may appeal." (Br. of Appellee at 16.) Angel Shores argues the Agreed Stipulation applies only to the jury's verdict, and not to the trial court's award of attorney's fees and litigation costs, as the relevant clause specifically uses the word "verdict" and not "judgment."

[8] When the terms of the contract are not ambiguous, we will give them their plain and ordinary meaning. *Shorter v. Shorter*, 851 N.E.2d 378, 383 (Ind. Ct. App. 2006). In ordinary language, the word "verdict" means "the finding or decision of a jury on the matter submitted to it in trial." *https://www.merriam-webster.com/dictionary/verdict* (last accessed February 28, 2017). The legal definition is almost identical - a verdict is "a jury's finding or decision on the factual issues of a case." *Black's Law Dictionary* at 1791 (10th ed. 2014). Thus, the clause in the Settlement Agreement stating, "The trial verdict will be final. Neither side will have the right to . . . appeal[,]" (Appellant's App. Vol. II at 64-5), refers only to the jury's decision on fault. The clause in the Agreed Stipulation does not waive appeal on the issue of attorney's fees and litigation expenses. Thus, we turn to the issues raised by Angel Shores.

# II. The Child Wrongful Death Statute

[9] Angel Shores asserts the trial court abused its discretion when it awarded attorney's fees and litigation expenses to the Crays under the CWDS. The CWDS, provides, in relevant part:

> (f) In an action to recover for the death of a child, the plaintiff may recover damages:
>
> > (1) for the loss of the child's services;
> >
> > (2) for the loss of the child's love and companionship; and
> >
> > (3) to pay the expenses of:
> >
> > > (A) health care and hospitalization necessitated by the wrongful act or omission that caused the child's death;
> > >
> > > (B) the child's funeral and burial;
> > >
> > > (C) the reasonable expense of psychiatric and psychological counseling incurred by a surviving parent or minor sibling of the child that is required because of the death of the child;
> > >
> > > (D) uninsured debts of the child, including debts for which a parent is obligated on behalf of the child; and
> > >
> > > (E) the administration of the child's estate, including reasonable attorney's fees.

* * * * *

(j) This section does not affect or supersede any other right, remedy, or defense provided by any other law.

Ind. Code § 34-23-2-1.

[10] The parties' arguments address the construction of the CWDS in light of Indiana's General Wrongful Death Statute ("GWDS"), which provides:

> When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, if the former might have maintained an action had he or she, as the case may be, lived, against the latter for an injury for the same act or omission. When the death of one is caused by the wrongful act or omission of another, the action shall be commenced by the personal representative of the decedent within two (2) years, and the damages shall be in such an amount as may be determined by the court or jury, including, but not limited to, reasonable medical, hospital, funeral and burial expenses, and lost earnings of such deceased person resulting from said wrongful act or omission. That part of the damages which is recovered for reasonable medical, hospital, funeral and burial expense shall inure to the exclusive benefit of the decedent's estate for the payment thereof. The remainder of the damages, if any, shall, subject to the provisions of this article, inure to the exclusive benefit of the widow or widower, as the case may be, and to the dependent children, if any, or dependent next of kin, to be distributed in the same manner as the personal property of the deceased. If such decedent depart this life leaving no such widow or widower, or dependent children or dependent next of kin, surviving her or him, the damages inure to the exclusive benefit of the person or persons furnishing necessary and reasonable hospitalization or hospital services in connection with the last illness or injury of

the decedent, performing necessary and reasonable medical or surgical services in connection with the last illness or injury of the decedent, to a funeral director or funeral home for the necessary and reasonable funeral and burial expenses, and to the personal representative, as such, for the necessary and reasonable costs and expenses of administering the estate and prosecuting or compromising the action, including a reasonable attorney's fee, and in case of a death under such circumstances, and when such decedent leaves no such widow, widower, or dependent children, or dependent next of kin, surviving him or her, the measure of damages to be recovered shall be the total of the necessary and reasonable value of such hospitalization or hospital service, medical and surgical services, such funeral expenses, and such costs and expenses of administration, including attorney fees.

Ind. Code § 34-23-1-1.

### A. Attorney's Fees under the CWDS

[11] We review a decision to grant attorney's fees for an abuse of discretion. *R.L. Turner Corp. v. Town of Brownsburg*, 963 N.E.2d 453, 457 (Ind. 2012). Indiana generally adheres to the American Rule that a party must pay his own attorney's fees absent an agreement between the parties, a statute, or other rule to the contrary. *Id*. at 458. Angel Shores argues the Crays cannot recover attorney's fees under the CWDS. The propriety of awarding attorney's fees in wrongful death actions has been discussed in recent appellate opinions, *e.g.*, *McCabe v. Commissioner, Indiana Dept. of Insurance*, 949 N.E.2d 816 (Ind. 2011) (Adult Wrongful Death Statute), and *SCI Propane, LLC v. Frederick*, 39 N.E.3d 675 (Ind. 2015) (General Wrongful Death Statute). However, the ability to

recover attorney's fees under the CWDS, in particular, is an issue of first impression in Indiana.

[12] The interpretation of a statute is a question of law reserved for the courts. *Hillebrand v. Supervised Estate of Large*, 914 N.E.2d 846, 848 (Ind. Ct. App. 2009). We review questions of law *de novo*, and we owe no deference to a trial court's legal conclusions. *Id*. Our main objective in statutory construction is to determine, effect, and implement the intent of the legislature. *Id*. In interpreting a statute, we will read the statute as a whole, attempting to give effect to all provisions so that no section is held meaningless if it can be reconciled with the rest of the statute. *Id*.

[13] An action for the wrongful death of a child did not exist at common law. *Id.* at 849. Thus, the CWDS is a derogation of common law and its provisions should be strictly construed. *See id.* (Adult Wrongful Death Statute is a derogation of common law and thus must be strictly construed). The parties rely primarily on our Indiana Supreme Court's recent holdings regarding the availability of attorney's fees under the Adult Wrongful Death Statute ("AWDS"), *McCabe*, 949 N.E.2d at 821,[5] and the GWDS, *SCI Propane, LLC*, 39 N.E.3d at 679.

---

[5] The trial court also relied on *Hematology-Oncology of Indiana, P.C. v. Fruits*, 950 N.E.2d 294 (Ind. 2011). *Fruits* references and applies the holding in *McCabe*, which was decided the same day, without further comment on the attorney's fees issue. *See Fruits*, 950 N.E.2d at 295-6 ("Applying *McCabe*, we hold that the trial court's award of litigation expenses was authorized by [the Adult Wrongful Death Statute]."). Thus, we

[14]   In the first case, McCabe, as personal representative of his mother's estate, filed an action pursuant to the AWDS, requesting "additional recovery from the [Indiana Patient's Compensation] Fund … plus costs, expenses, and attorney fees related to the administration of the wrongful death estate and the prosecution of the action." *McCabe,* 949 N.E.2d at 817-8. The trial court granted partial summary judgment in favor of the Fund, after deciding McCabe had to rely on the language of the AWDS to determine whether he was entitled to attorney's fees because the GWDS and the AWDS were "disjunctive remedies." *Id*. at 818. The trial court concluded attorney's fees are not recoverable under the AWDS and, thus, McCabe was not entitled to attorney's fees arising out of the action.

[15]   When examining the trial court's decision, our Indiana Supreme Court gave a brief history of the GWDS, the AWDS, and the CWDS:

> Located within Title 34 (Civil Law and Procedure) of the Indiana Code, Article 23 is titled "Causes of Action: Wrongful Death." Within Article 23, there are two chapters, Chapter 1, entitled "Wrongful Death Generally," and Chapter 2, entitled "Wrongful Death or Injury of a Child." Chapter 1 contains two sections, with Section 1 (the GWDS) generally permitting wrongful death actions and expressly permitting recovery of specified types of pecuniary damages including attorney fees and costs and expenses of administration and prosecution of the action. Ind. Code § 34-23-1-1 (originally enacted in 1881 and subsequently amended several times through 1998). Section 2 (the AWDS)

---

need not discuss *Fruits* in more detail, as it would not provide further insight into the issue of the award of attorney's fees.

authorizes a wrongful death action specifically for the death of an adult person who is unmarried and without any dependents and expressly permits recovery for specified damages including but not limited to specified types of damages including "loss of the adult person's love and companionship" but not explicitly enumerating attorney fees and costs of administration and prosecution of the action. Ind. Code § 34-23-1-2 (enacted in 1999). Chapter 2 of Article 23 permits an action for the wrongful death of an unmarried child without dependents and allows for recovery of specified types of damages, some of which include loss of the child's services, love, and companionship; costs of administration of the child's estate; and reasonable attorney fees. Ind. Code § 34-23-2-1 (enacted in 1998 and amended in 2007, 2008, and 2009).

*Id.* The AWDS states, in relevant part:

(c) In an action to recover damages for the death of an adult person, the damages:

\* \* \* \* \*

(3) may include but are not limited to the following:

(A) Reasonable medical, hospital, funeral, and burial expenses necessitated by the wrongful act or omission that caused the adult person's death…

Ind. Code § 34-23-1-2.

[16] The *McCabe* Court acknowledged that the AWDS lacked explicit language providing for an award of attorney's fees. Looking to the relationship between the GWDS and the AWDS, however, the *McCabe* Court reasoned that the

statute's provision that damages "may include but are not limited to" those specifically mentioned could be construed to permit the recovery of attorney's fees, especially where such an award was permitted under the GWDS. *McCabe*, 949 N.E.2d at 821. To support that conclusion, the Court relied on the principle of statutory interpretation "that two statutes that apply to the same subject matter must be construed harmoniously if possible," which "takes precedence over other rules of statutory interpretation." *Id*. at 820. The court continued:

> The structure of the AWDS does not parallel that of the GWDS in creating a new statutory cause of action, but it appears to focus upon the mere amplification of damages allowed by the GWDS to include the loss of the adult person's love and companionship in the narrow class of actions for the wrongful death of an unmarried adult without dependents. The AWDS also specifically designated only two types of damages that could not be recovered: punitive damages and "damages awarded for a person's grief." Ind. Code § 34-23-1-2(c)(2). If the legislature had desired the AWDS to exclude elements of damages expressly included in the GWDS, this would seem the most likely way to have ensured such objective. Significantly, the General Assembly designated the GWDS as Section 1 and the AWDS as Section 2 of Chapter 1 addressing "Wrongful Death Generally."

*Id*. at 820-1. The Court then concluded: "Considering the GWDS and the AWDS *in pari materia*[6] and warranting harmonious interpretation, we find that

---

[6] *In pari materia* is a legal canon which allows statutes to be construed together, "so that inconsistencies in one statute may be resolved by looking at another statute on the same subject." *Black's Law Dictionary* at 911 (10th ed. 2014).

the phrase 'may include but are not limited to' in the AWDS includes the availability of attorney fees and all other elements of damages permitted under the GWDS." *Id.* at 821 (footnote added).

[17] In *SCI Propane*, our Indiana Supreme Court addressed whether the GWDS permitted recovery of attorney's fees "as a form of damages when the decedent is survived by a spouse and/or dependents." 39 N.E.3d at 676. The Court determined the GWDS delineates two separate categories of decedents:

> The first category includes all decedents generally, without any additional conditions, in which case the estate is entitled to recover damages "including, but not limited to, reasonable medical, hospital, funeral and burial expenses, and lost earnings of such deceased person resulting from said wrongful act or omission." There is a fixed list of death-related expenses available to the estate directly as damages: "medical, hospital, funeral and burial[.]" The remaining damages, if any, must "inure to the exclusive benefit of the widow or widower, as the case may be, and to the dependent children, if any, or dependent next of kin, to be distributed in the same manner as the personal property of the deceased."

> The second category includes only those decedents who "depart this life leaving no such widow or widower, or dependent children or dependent next of kin, surviving her or him." In such instances, the damages "inure to the exclusive benefit of the person or persons furnishing" services related to the decedent's death, and the personal representative of the estate is expressly entitled to recover reasonable attorneys' fees in "prosecuting or compromising the action."

*Id.* at 678. The Court noted the AWDS and the CWDS require the deceased to be unmarried and without dependents, and thus, "every decedent in the second GWDS category also satisfies the conditions to bring suit under either the AWDS or the CWDS." *Id.* at 679. The Court acknowledged its earlier decision in *McCabe* and concluded that the *McCabe* decision dealt with those in the second category of decedents. *Id.* Because the plaintiff in *SCI Propane* was the widow of the deceased and the personal representative of his estate, the court concluded that her claim fell within the first category of decedents under the GWDS. Thus, the court held that Frederick, as a widow of the deceased, was not entitled to an award of attorney's fees under the GWDS. *Id.*

[18] The CWDS provides that a plaintiff in an action alleging the wrongful death of a child may recover damages to pay the expense of "the administration of the child's estate, including reasonable attorney's fees." Ind. Code § 34-23-2-1(f)(3)(E). Angel Shores contends that because the Crays filed their complaint in their capacity as Zachary's parents pursuant to Indiana Code § 34-23-2-1(c), rather than as personal representatives administering Zachary's estate,[7] the Crays are not entitled to separate payment of attorney's fees. Countering this argument, the Crays direct us to *McCabe* and *SCI Propane* for the proposition that, as with the AWDS, the CWDS amplifies the remedies provided by the GWDS, and that because they fall within the second category of the GWDS, as

---

[7] A personal representative would be appointed under the CWDS "[i]n the case of the death of the person to whom custody of the child was awarded[.]" Ind. Code § 34-23-2-1(d).

set forth in *SCI Propane*, they are entitled to attorney fees separate from the award of compensatory damages.

[19] We agree with the Crays. The nature of their action brings them within the second category set forth in *SCI Propane*: that of a plaintiff seeking relief for the death of a dependent child. *SCI Propane*, 39 N.E.3d at 678. As in *McCabe*, the CWDS operates as a "mere amplification" of those remedies available under the GWDS. *See McCabe*, 949 N.E.2d at 840 (indicating the AWDS is a "mere amplification" of the GWDS). Notably, the CWDS also amplifies the scope of persons who can pursue a wrongful death claim: not only personal representatives of estates, but parents can also bring such claims, Indiana Code § 34-23-2-1(c)(1), and the statute does not limit the payment of estate administration expenses only to personal representatives. Ind. Code § 34-23-2-1(f)(3)(E).

[20] Moreover, the plain language of the CWDS and caselaw interpreting the AWDS support this result. In *McCabe*, the court noted that the language of the AWDS provided a list of types of damages with the qualifier that the damages "may include but are not limited to" those items. Ind. Code § 34-23-1-2(c)(3). Here, the relevant language of the CWDS is, "[t]his section does not affect or supersede any other right, remedy or defense provided by any other law." Ind. Code § 34-23-2-1(j). As the plain language of the CWDS allows for other remedies as provided by law, and the second category of the GWDS provides for attorney's fees, it is logical to construe the two in harmony, and conclude that a party filing an action under the CWDS, like a party filing an action under

the AWDS, is entitled to attorney's fees under the second category of the GWDS. The Crays' claim is thus one for which they may separately recover attorney's fees under the CWDS, and the trial court did not abuse its discretion when it granted the Crays' motion for fees.

## B. Litigation Expenses under the CWDS

[21] Angel Shores argues the trial court erred when it awarded litigation expenses to the Crays under the CWDS. Angel Shores argues those expenses the trial court considered compensable as litigation expenses including "[the Crays'] counsel's parking violations and parking tickets, mileage reimbursements, deposition fees, hotel stays, and restaurant bills[,]" (Br. of Appellant at 30), were not proper, as we have held costs "is an accepted legal term of art that has been strictly interpreted to include only filing fees and statutory witness fees. Thus, in the absence of manifest contrary legislative intent, the term 'costs' must be given its accepted meaning, which does not include litigation expenses." (*Id*.) (quoting *City of Jeffersonville v. Environmental Mgmt. Corp*., 954 N.E.2d 1000, 1014 (Ind. Ct. App. 2011)).

[22] *City of Jeffersonville* is not applicable, as it addresses whether expenses are recoverable under the general recovery statute, Indiana Code Section 34-52-1-1, not the wrongful death statutes. We find instructive as precedent our Indiana Supreme Court's decisions in *McCabe*, 949 N.E.2d at 821 (affirming trial court's award of "costs, expenses, and attorney fees related to the administration of the wrongful death estate and the prosecution of the action" under the AWDS); *Hematology-Oncology of Indiana, P.C. v. Fruits*, 950 N.E.2d 294, 297 (Ind. 2011)

(same holding, though limiting amount recoverable under the Medical Malpractice Act); *and Indiana Patients Compensation Fund v. Brown*, 949 N.E.2d 822, 824 (Ind. 2011) (same holding as *Fruits*). Thus, we conclude expenses are recoverable under the CWDS.[8]

## III. Application of Comparative Fault Percentage

[23] Angel Shores argues that the trial court abused its discretion when it assessed the entirety of the Crays' litigation expenses against it. Angel Shores contends that under Indiana Code § 34-52-1-5, it would be liable for only 5% of the plaintiffs' expenses, in keeping with the total allocation of comparative fault against it at trial as compared to the 95% fault rating attributed to the Wagners.

[24] Indiana Code § 34-52-1-5 provides, in relevant part, "In actions where there are several plaintiffs or several defendants, the costs shall be apportioned according to the judgment rendered." Angel Shores' approach rests on a reading of the apportionment statute that looks to the language, "In actions where there are … several defendants," *id.*, and construes it to have the same effect upon litigation

---

[8] Relatedly, Angel Shores argues the Crays did not present any evidence beyond an exhibit attached to their motion for award of attorney's fees and expenses and, thus, the trial court erred in unilaterally determining the expenses were related to the prosecution of the action arising from Zachary's death. Angel Shores' argument is waived because Angel Shores did not advance that argument before the trial court. *See Lea v. Lea*, 691 N.E.2d 1214, 1218 (Ind. 1998) (issue presented for the first time on appeal is waived). Further, we note Angel Shores pointed to certain charges they felt were egregious such as parking fees and mileage expenses. At first blush, it would seem some of these expenses exceeded a reasonable amount, such as parking fees in excess of $1,000. However, further inspection of the record reveals the ledger entered into evidence was slightly skewed to the point the rows and columns did not line up properly. We encourage counsel to thoroughly review their materials included in the appendices to ensure they accurately depict what was submitted to the trial court.

expenses as the Indiana Comparative Fault Act, Indiana Code § 34-51-2-1 *et seq.*, has upon compensatory damages in cases with designated, at-fault nonparties. Given Angel Shores' interpretation of the statute, the "costs … apportioned according to the judgment rendered," *id.*, would be attributed to the various parties involved in the action relative to the various liability percentages entered at the time of judgment. The plaintiff would recover expenses subsequent to the judgment only from those defendants that remained parties to the action. The total litigation expenses taxed against those parties would be determined by their relative liability as against at-fault nonparties as determined by the judgment. On this reasoning, Angel Shores would bear only 5% of the total expenses: even though the case proceeded to trial with Angel Shores as the sole defendant, Angel Shores was found to be only 5% at fault under Indiana's comparative fault scheme, and thus it could be liable for only 5% of the Crays' litigation expenses.

[25] We disagree with this construction of the statute. We think the Legislature identified the time of judgment as the point at which litigation expenses should be allocated, and that those expenses should be allocated only among parties to the action at the time of the entry of judgment. The language of the statute, "where there are … several defendants, the costs shall be apportioned according to the judgment rendered," Indiana Code § 34-52-1-5, does not provide for a 5% allocation of expenses against Angel Shores from the inception of the action through its conclusion. The statutory language makes no mention of nonparties, such as former defendants who have settled and been dismissed

from the case. And while Angel Shores looks to the Comparative Fault Act for guidance on the allocation of expenses, that statute addresses only "*compensatory damages* for an injury attributable to the claimant's contributory fault." Ind. Code § 34-51-2-5 (emphasis added). "[C]ompensatory damages for an injury" are not the same as litigation expenses, and thus allocation based upon the comparative fault of nonparties is not contemplated by the language of Indiana Code § 34-52-1-5.

[26] Absent reliance upon the Comparative Fault Act, then, Indiana Code § 34-52-1-5 provides for the allocation of litigation expenses only among those parties that remained in the action through the entry of judgment. This rule ensures that courts act in accordance with the Legislature's concern for the state of the case and the parties at the time of judgment, which is reflected in statutory language requiring that expenses be apportioned among "defendants … according to the judgment rendered." Ind. Code § 34-52-1-5. This result also serves the important policy interest of encouraging settlement, on the one hand, and discouraging litigation against parties who should properly be released, on the other. *See Mendenhall v. Skinner and Broadbent Co., Inc.*, 728 N.E.2d 140, 145 (Ind. 2000) (noting that "[t]he policy of the law generally is to discourage litigation and encourage negotiation and settlement of disputes"). By ensuring that expenses may be taxed in full at the end of the litigation, defendants will be encouraged to settle so that they can negotiate the extent of their exposure to litigation expenses, rather than having them imposed by the court. Plaintiffs will be encouraged to dismiss parties whose presence in the litigation is

unnecessary, because there is assurance that the recovery of expenses will not be diminished simply because a party was released from the litigation before the case was resolved by a court or jury.

[27] Here, Angel Shores and the Crays agreed to submit the question of litigation expenses to the trial court for resolution: counsel for Angel Shores stated, "I am in agreement with your [counsel for the Crays] suggestion that we allow the Judge to determine attorney fees and expenses after the trial." (Appellant's App. Vol. II at 74.) As we held above, the parties' agreement that capped damages did not have the effect of entirely waiving appellate review. Likewise, the agreement between counsel to submit the question of fees and expenses to the trial court is not so explicit as to grant the trial court *carte blanche* to assess any amount it wished without appellate review: the parties' agreement simply left the matter to the trial court's discretion.

[28] Exercising that discretion, the trial court determined that Angel Shores was responsible for paying the Crays' litigation expenses without a reduction proportionate to Angel Shores' comparative fault relative to the Wagners, who by the time of trial were a nonparty. This comports with our construction of Indiana Code § 34-52-1-5, under which Angel Shores—the sole defendant remaining in the litigation through judgment—was obligated under the statute to pay the Crays' reasonable expenses as incurred throughout the litigation, without a reduction connected to the jury's comparative fault determination. Further, the specific amount awarded in litigation expenses was within the

range of the evidence. We accordingly find no abuse of discretion and affirm the trial court's award to the Crays.

# Conclusion

The parties' Agreed Stipulation does not waive appeal of the issue of attorney's fees and litigation expenses because the plain language of the waiver applies to the "trial verdict," which is a function of the jury, not the trial court, and the trial court decided the issue of attorney's fees and damages. Regarding the issues Angel Shores brought on appeal, we conclude the CWDS, as a mere amplification of the GWDS, allows the recovery of attorney's fees and expenses, and the trial court did not err in its assessment of attorney's fees and litigation expenses. Accordingly, we affirm the trial court's order.

Affirmed.

Najam, J., and Bailey, J., concur.