Linda JOHNSON, as Co–Personal Representative of the Estate of Jason Mills, Deceased, Appellant–Plaintiff,

v.

PARKVIEW HEALTH SYSTEMS, INC., d/b/a Parkview Memorial Hospital, Appellee–Defendant.

No. 02A03–0303–CV–108.

Court of Appeals of Indiana.

Jan. 23, 2004.

Transfer Denied May 13, 2004.

David W. Holub, Jill D. Manges, Ruman, Clements & Holub, P.C., Hammond, IN, Attorneys for Appellant.

Dane L. Tubergen, Mark W. Baeverstad, Hunt Suedhoff Kalamaros, LLP, Fort Wayne, IN, for Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Linda Johnson ("Johnson"), as co-personal representative of the estate of her son, Jason Mills ("Jason"), appeals the trial court's decision granting summary judgment to Parkview Health Systems ("Parkview") on her wrongful death claim.[1] She presents several issues for our review, which we restate as whether a personal representative may maintain an action under the Child Wrongful Death Statute, and whether the complaint could be amended to include Johnson in her individual capacity.

The judgment is reversed.

Jason, the eighteen-year-old son of Johnson, was injured in an automobile accident on May 16, 1998. Jason was admitted to Parkview Memorial Hospital for treatment. On May 25 and early in the morning on May 26, Jason's condition began to decline. No doctor was called until 6:55 a.m. on May 26. However, neither

---

1. The record does not disclose the identity of Johnson's co-personal representative, but suggests that it is an attorney, Bruce Norman Stier.

the first nor second doctor paged by the nurses was able to assist in the care of Jason. A third doctor was paged between 7:05 and 7:15 a.m. At 7:15 a.m., Jason was found to be unresponsive and lying in a pool of blood. A "code blue" was initiated. The doctors and nurses were unable to resuscitate Jason.

Following the Medical Review Panel's determination that Parkview failed to comply with the appropriate standard of care in the treatment of Jason, Johnson, as personal representative of Jason's estate, filed this cause of action against Parkview on April 12, 2002. In the complaint, she alleged that as a "direct and proximate result of the carelessness and negligence of defendant, the estate of plaintiff's decedent incurred extraordinary medical and funeral expenses, and the dependent next-of-kin of plaintiff's decedent as well as plaintiff and his other family members were also injured and damaged." Appendix at 38. Finally, she noted that she was appointed as personal representative for the purpose of proceeding in the cause of action.

Parkview filed a motion for summary judgment, claiming in part that the action was brought under Indiana Code § 34–23–1–1 (Burns Code Ed. Repl.1998), the General Wrongful Death Statute ("WDS"), and that recovery was unavailable because Jason was not survived by next-of-kin. This claim was supported by designated evidence and argument in the memorandum in support of the motion for summary judgment.

Johnson subsequently filed a memorandum in opposition to the motion for summary judgment. She asserted that the cause of action was appropriately brought under the Child Wrongful Death Statute ("CWDS"), Ind.Code § 34–23–2–1 (Burns Code Ed. Repl.1998), and that Parkview was incorrect in stating that it was brought under the WDS. Further, she claimed that the CWDS does not prohibit a personal representative from initiating such an action, and because a personal representative must bring an action under the WDS, the two statutes should be construed together to produce a harmonious result. Thus, she opined that a personal representative must be allowed to bring a claim under the CWDS. Finally, she stated that if she could not proceed as personal representative that she should be allowed to amend the complaint to include both herself and Jason's father in their individual capacities so that the action might proceed.

The trial court subsequently concluded that Jason was a "child" within the meaning of I.C. § 34–23–2–1 and that the action must be maintained under the CWDS. The trial court then concluded that the case of *Hosler v. Caterpillar, Inc.*, 710 N.E.2d 193 (Ind.Ct.App.1999), *trans. denied*, was dispositive of the issues in this case. Based upon its understanding of *Hosler*, the trial court determined that Johnson could not maintain the action as personal representative and was unable to amend the complaint to change her status from personal representative to that of her individual capacity.

Summary judgment is appropriate when the designated evidentiary matter reveals that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Hammock v. Red Gold, Inc.*, 784 N.E.2d 495, 498 (Ind.Ct.App.2003), *trans. denied*. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that there is an entitlement to judgment as a matter of law. *Id.* If the moving party meets these requirements, the burden then shifts to the nonmovant to establish

genuine issues of material fact for trial. *Id.*

In reviewing the grant or denial of a motion for summary judgment, we are bound by the same standard as the trial court. *Id.* We consider only those facts which were designated to the trial court at the summary judgment stage. *Id.* We do not reweigh the evidence, but rather, liberally construe all designated evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact. *Id.* Even if the facts are undisputed, summary judgment is inappropriate where the record reveals an incorrect application of the law to the facts. *Id.*

■ Actions for wrongful death are purely statutory in nature. *City of Indianapolis v. Taylor,* 707 N.E.2d 1047, 1059 (Ind.Ct.App.1999), *trans. denied.* At common law, there was no liability in tort for killing another because actions for personal injury did not survive the death of the injured party. *Id.* Therefore, actions for wrongful death, including those under the CWDS, should be strictly construed against the expansion of liability. *Forte v. Connerwood Healthcare, Inc.,* 745 N.E.2d 796, 800 (Ind.2001).

The interpretation of a statute is a question of law which is reserved for the courts. *Grabarczyk v. State,* 772 N.E.2d 428, 430 (Ind.Ct.App.2002). When construing a statute, our foremost objective is to ascertain and give effect to the intent of the legislature. *Melrose v. Capitol City Motor Lodge, Inc.,* 705 N.E.2d 985, 989 (Ind.1998). We examine the statute as a whole and give common and ordinary meaning to the words employed. *Robinson v. Wroblewski,* 704 N.E.2d 467, 474 (Ind.1998). We presume that the legislature intended the language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Citizens Action Coalition of Indiana, Inc. v. Indiana Statewide Ass'n of Rural Elec. Coops., Inc.,* 693 N.E.2d 1324, 1327 (Ind. Ct.App.1998).

■ Parkview asserts that summary judgment was appropriate because Johnson pursued the claim under the WDS rather than the CWDS. To support its claim, Parkview relies upon *Estate of Sears v. Griffin,* 771 N.E.2d 1136, 1138 (Ind.2002). In that case, our Supreme Court held that the WDS and the CWDS are disjunctive. *Id.* In other words, if a decedent fits within the description of one statute, the decedent will not fit within the other. More to the point, if the decedent fits within the CWDS description, that statute provides the exclusive remedy for wrongful death. *Id.* As alluded to by our Supreme Court in a parenthetical citation, the CWDS and the WDS do not afford optionally alternative remedies and they cannot be pursued together. *Id.*

■ From reading the complaint, we deduce that Johnson initially was pursuing this cause of action under the WDS. Specifically, Johnson pursued the action as the personal representative of Jason's estate rather than as his mother. In fact, she stated in the complaint that she was appointed as personal representative for the purpose of pursuing this claim. This is significant because the WDS requires that any action pursued therein be brought by the personal representative of the decedent's estate. *Hosler,* 710 N.E.2d at 196; I.C. § 34–23–1–1 (stating "the action shall be commenced by the personal representative of the decedent").

Further, the complaint stated that Jason's estate "incurred extraordinary medical and funeral expenses, and the dependent next-of-kin of plaintiff's decedent as well as plaintiff and his other family members were also injured and damaged."

App. at 38. The words "dependent next-of-kin" are found in the WDS but are not included in the CWDS. In fact, the concept that the decedent may have dependents is totally foreign to the CWDS. According to the CWDS, a decedent may only be a "child" within the meaning of the CWDS if that individual is without dependents. I.C. § 34–23–2–1. Thus, there is little doubt that the complaint filed by Johnson was prominently influenced by the WDS. Nonetheless, we cannot say that summary judgment is appropriate upon the ground that Johnson was pursuing a claim upon a theory which was unavailable to her.

In her answer to interrogatories submitted by Parkview, Johnson explicitly stated that she was pursuing the claim under the CWDS. Also, the facts which she alleged clearly indicated that Jason was a "child" for purposes of the CWDS. This information was designated to the trial court for its consideration in ruling upon the motion for summary judgment. These facts were also argued before the trial court at the hearing upon the summary judgment motion. Therefore, while there may have initially been some question about which theory of recovery was relied upon by Johnson in filing her claim, there was no question at the time of the summary judgment hearing that Johnson was relying upon the CWDS, as was necessary according to the factual situation in this case. Thus, the trial court appropriately determined that the cause of action necessarily was proceeding under the CWDS.

■ Because this cause of action was appropriately proceeding under the CWDS, we must now determine whether the personal representative of an estate may maintain a cause of action under the CWDS. The CWDS states that an action against the person whose wrongful act or omission caused the injury or death of the child may be maintained by:

"(1) the father and mother jointly, or either of them by naming the other parent as a codefendant to answer as to his or her interest;

(2) in case of divorce or dissolution of marriage, the person to whom custody of the child was awarded; and

(3) a guardian, for the injury or death of a protected person." I.C. § 34–23–2–1.

The statute further provides that in the event that the person to whom custody of the child was awarded passes away, a personal representative shall be appointed to maintain the action. I.C. § 34–23–2–1(c).

Comparing the WDS and the CWDS, we see that the legislature has made different choices regarding who may pursue an action for wrongful death under the respective statutes. When an action is brought under the WDS, it must be brought by the personal representative of the decedent. When an action is brought under the CWDS, it must be brought by the decedent's parents, by the parent who has custody of the child following a divorce or dissolution of marriage, or the guardian of the child. The personal representative of the decedent's estate may not maintain the cause of action except upon the death of the person to whom custody of the child was awarded. No other result may be obtained according to the language employed by our legislature.

In this case, both of Jason's parents were alive at the time of his death, though they were not married to each other. The record is not clear as to which parent was awarded custody following their divorce, but Jason spent time living with each parent. Because the evidence established that both parents were alive at the time of Jason's death—assuring that the custodial parent was alive at that time—the personal representative of Jason's estate could not maintain the action. Therefore, the

trial court's conclusion that Johnson could not maintain the action as the personal representative of the estate was proper.

■ Nonetheless, Johnson requested of the trial court that in the event that it was determined that she could not pursue a claim under the CWDS as personal representative, that she be allowed to amend the pleading so that she and Jason's father be included as parties in their individual capacities. In *Hosler*, this court addressed a similar argument in the context of the WDS. There, the ex-wife of a decedent filed a wrongful death claim for her minor son, as his next friend, against Caterpillar for the death of the child's father. This court noted that it is a condition precedent to prosecuting a claim under the WDS that it be brought by a personal representative within two years of the date of death. *Hosler*, 710 N.E.2d at 196–97. In order to comply with this requirement, the ex-wife attempted to amend the pleading to include herself as personal representative of her ex-husband's estate. However, she did not seek the amendment until after the two-year period for initiation of the cause of action by a personal representative had passed. This court agreed that the trial court was correct in determining that the condition precedent for the initiation of a claim—filing by a personal representative within two years of the death—had not been met and therefore the claim could not survive. *Id.* at 197.

The *Hosler* court also determined that the ex-wife could not rely upon Indiana Trial Rule 15 to support her assertion that she be allowed to amend the complaint and include herself as personal representative. *Id.* First, an amendment to a complaint

pursuant to T.R. 15 does not alter a party's legal status. *Id.* at 198. Moreover, the amendment of the complaint would not have related back to the original filing of the claim because the ex-wife was not a qualified plaintiff for a wrongful death action until she became the personal representative. *Id.*

The *Hosler* court also determined, based upon this court's decision in *General Motors Corp. v. Arnett*, 418 N.E.2d 546 (Ind. Ct.App.1981), that the complaint could not be amended pursuant to Indiana Trial Rule 17. 710 N.E.2d at 196. In *Arnett*, we concluded that T.R. 17 was not controlling as to whether the claimant could maintain a cause of action under the WDS because she did not have the capacity to serve as personal representative of her husband's estate until after the two-year period for initiating the action had passed.[2] 418 N.E.2d at 548–49. Rather, we noted that substantive law controlled over the procedural liberality contained in Trial Rule 17. *Id.* at 549.

■ In this case, the trial court found, and Parkview asserts, that based upon our decisions in *Arnett* and *Hosler*, Johnson may not amend the complaint to include herself and Jason's father in their individual capacities. However, the facts of this case are distinguishable from those of *Arnett* and *Hosler*. In both of those cases, the claimant did not become the personal representative of the estate until after the two-year time period for initiation of the claim by the personal representative had passed. Johnson, on the other hand, was at all times the mother of Jason and qualified to maintain the action against Parkview.[3] Consequently, the substantive law

---

**2.** In *Arnett*, the wife of the decedent filed a complaint erroneously stating that she was the personal representative of the estate within the required two-year time period. However, she was in fact not appointed personal

representative until four months after the statutory period had expired. 418 N.E.2d at 547.

**3.** The record is not clear as to which parent had custody of Jason. If Johnson was the

did not prohibit the initiation of the claim by Johnson at the time that she originally filed the cause of action. Moreover, because Johnson was the mother of Jason at the time she initiated the cause of action, the prohibitions on amending the complaint present in *Arnett* and *Hosler* are not present here. In both *Arnett* and *Hosler*, we found that the complaint could not be amended because the claimant did not have the appropriate legal status when the two-year period for initiating the claim had passed and amending the claim could not change the legal status of the claimant. Because Johnson was Jason's mother at all times, amending the complaint does not change her legal status. Rather, it changes only the designation of her legal status—with which she was appropriately endowed at the time she initiated the action—as stated upon the complaint.[4] Such amendment is within the scope of T.R. 15 and T.R. 17, and according to T.R. 15, the amendment relates back to the date of the original pleading.[5] Consequently, the trial court should have allowed Johnson to amend the complaint as she requested.

■ One final argument presented by Johnson is that even if she could not proceed under the CWDS that she be allowed to proceed under the Medical Malpractice Act. This contention has merit as our Supreme Court has held that an action for death resulting from a health care provider is not exclusively within the ambit of the WDS, but may properly be brought under the Medical Malpractice Act. *Miller v. Terre Haute Regional Hosp.*, 603 N.E.2d 861, 864 (Ind.1992). Indeed, in *Goleski v. Fritz*, 768 N.E.2d 889 (Ind.2002), our Supreme Court determined that a representative of a decedent could pursue a claim under the Medical Malpractice Act even though she could not maintain an action under the WDS.

However, the theory that recovery was available under the Medical Malpractice Act regardless of the existence of a claim under the CWDS or the WDS was not before the trial court. We have found nothing in the appendix or transcript which indicates that this argument was presented to the trial court during the summary judgment proceedings. Rather, the sole theory of recovery was that Johnson could seek damages through the CWDS.

■ A party generally waives appellate review of an issue or argument unless that party presented that issue or argument before the trial court. *GKC Indiana The-*

---

custodial parent of Jason, she may maintain the action according to the mandate of the CWDS. If Jason's father was the custodial parent, Johnson may still maintain the action, but she must include Jason's father as a named party according to the CWDS. *See Chamness v. Carter*, 575 N.E.2d 317 (Ind.Ct. App.1991) (holding that non-custodial parent may maintain an action under the CWDS as long as the custodial parent is joined in the action); T.R. 17 (stating that no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time after objection has been allowed for the real party in interest to ratify or be joined or substituted in the action).

4. The argument that Johnson is changing her pleading legal status by amending the complaint is unavailing. In essence, whether the pleading legal status is correct is a secondary concern because the overriding fact is that Johnson's status as mother never changed.

5. The applicable period of time in which Johnson was required to initiate this cause of action was the two-year period established by the Medical Malpractice Act. *See Randolph v. Methodist Hospitals, Inc.*, 793 N.E.2d 231, 237 (Ind.Ct.App.2003) (holding that the time period to bring a claim under the CWDS which has its basis in medical malpractice is controlled by the Medical Malpractice Act). *See also Hopster v. Burgeson*, 750 N.E.2d 841, 852–53 (Ind.Ct.App.2001).

*atres, Inc., v. Elk Retail Investors, LLC,* 764 N.E.2d 647, 652 (Ind.Ct.App.2002). However, that principle is not without limits. As explained by this court in *Bielat v. Folta:*

> "The rule that parties will be held to trial court theories by the appellate tribunal does not mean that no new position may be taken, or that new arguments may not be adduced; all that it means is that substantive questions independent in character and not within the issues or not presented to the trial court shall not be first made upon appeal. Questions within the issues and before the trial court are before the appellate court, and new arguments and authorities may with strict propriety be brought forward." 141 Ind.App. 452, 454, 229 N.E.2d 474, 475 (1967).

Here, the trial court never had the opportunity to determine whether a cause of action existed under the Medical Malpractice Act separate from the WDS or the CWDS because Johnson never made that claim in opposing the motion for summary judgment. Instead, she placed her entire ability to recover upon whether she had properly pursued a claim under the CWDS. Consequently, we may not review this new theory of recovery for the first time in this appeal.

The judgment of the trial court is reversed and the matter is remanded for further proceedings.

FRIEDLANDER, J., and RILEY, J., concur.