

**FILED**

May 16 2018, 10:23 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy F. Devereux
Ladendorf Law
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Thomas J. Jarzyniecki, Jr.
Susan R. Shan
Kightlinger & Gray, LLP
Indianapolis, Indiana

Crystal G. Rowe
Kightlinger & Gray, LLP
New Albany, Indiana
Attorneys for MGA Family Group, Inc,
and H Properties LLP

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lillian Parsley, as the Guardian, Grandparent, and Next Friend of Robert Parsley, Deceased, | May 16, 2018 |
| *Appellant-Plaintiff,* | Court of Appeals Case No. 19A01-1707-CT-1535 |
| v. | Appeal from the Dubois Superior Court. |
| MGA Family Group, Inc., H Properties LLP, Mark Snedeker, and Video Tech/Direct Maytag HAC, | The Honorable Mark R. McConnell, Judge. |
| *Appellees-Defendants.* | Trial Court Cause No. 19D01-1610-CT-545 |

**Sharpnack, Senior Judge**

# Statement of the Case

After a fire took the lives of Lillian Parsley's daughter and grandson, she sought wrongful death damages. She brings this interlocutory appeal from the trial court's order that granted MGA Family Group, Inc., H Properties LLP, and Mark Snedeker's (collectively, "the Defendants") motion to dismiss the wrongful death action that Lillian initiated as to her grandson. We affirm.

# Issue

The issue Lillian presents for our review (consolidated and restated) is whether the trial court erred in granting the Defendants' motion to dismiss her wrongful death action as to her grandson.

# Facts and Procedural History

Linsey Parsley had given birth to her son, Robert, while she was a sophomore in high school. On November 26, 2014, Linsey, then twenty years old, and her three-year-old son Robert were living in a Jasper, Indiana apartment with Alex Snedeker. On that day, Linsey, Robert, and Alex died as the result of an apartment fire. Following the deaths, Linsey's mother, Lillian was appointed personal representative of Linsey's estate.

On October 21, 2016, Lillian brought an action against the Defendants to recover damages for Linsey's death, under the Indiana Adult Wrongful Death

Statute, and for Robert's death under the Child Wrongful Death Statute[1] (CWDS). Lillian brought the wrongful death claim as to Robert as his "Guardian, Grandparent and Next Friend." Appellant's App. Vol. II, p. 17.

[5] On December 14, 2016, the Defendants filed an Indiana Trial Rule 12(B)(6) motion to dismiss, claiming Lillian's complaint failed to state a claim upon which relief could be granted. The motion alleged specifically that she lacked standing to pursue a claim for Robert under the CWDS because she was neither Robert's parent nor guardian at the time of his death. Lillian filed a response that included supplemental material.[2] Following a hearing, the trial court dismissed Lillian's wrongful death claim as to Robert.

[6] Lillian filed a motion to reconsider, and the trial court denied her motion. Upon Lillian's request, the trial court certified the order for interlocutory appeal, and Lillian then sought leave to pursue a discretionary interlocutory

---

[1] Ind. Code § 34-23-2-1 (2009).

[2] Lillian supplemented her response to the Defendants' Indiana Trial Rule 12(B)(6) motion to dismiss with an affidavit and her tax returns. Per *Dixon v. Siwy*, 661 N.E.2d 600, 603 (Ind. Ct. App. 1996):

> [W]hen examination of the face of a complaint alone reveals that the plaintiff will not be entitled to relief under any set of circumstances, consideration of external materials aimed at substantiating or contradicting the complaint's factual allegations is irrelevant, because *a fortiori* the complaint fails to state a claim upon which relief can be granted under any factual scenario. In that instance, the trial court should exclude material outside the pleadings which are submitted with a 12(B)(6) motion, rather than convert the motion into one for summary judgment, because the external materials are irrelevant to the motion.

Although the trial court did not expressly exclude Lillian's supplemental material, there is no evidence that the trial court considered the material in making its determination to grant the Defendants' motion to dismiss. *See, e.g., Trail v. Boys and Girls Clubs of Nw. Ind.,* 845 N.E.2d 130, 134, 140 (Ind. 2006) (affirming the trial court's grant of a motion to dismiss under Rule 12(B)(6) even after the parties "filed several affidavits, exhibits, and briefs").

appeal of the trial court's order. We granted her motion, and this appeal ensued.

# Discussion and Decision

## Motion to Strike

[7] Initially, we must address MGA Family Group and H. Properties' motion to strike portions of Lillian's brief and appendix and portions of Appellee Mark Snedeker's appendix. MGA Family Group and H. Properties allege that the brief and appendices contain or refer to materials that are not part of the record for the motion to dismiss, i.e., an order from an unrelated case, pleadings that pertain to a separate motion filed by MGA Family Group and H. Properties for judgment on the pleadings, a Marion County Superior Court decision from an unrelated case, a deposition, "Pew Research" statistics, a lease agreement, and an affidavit. By separate order issued contemporaneously with this opinion, we grant MGA Family Group and H. Properties' motion to strike.[3]

## Standard of Review

[8] A motion to dismiss for failure to state a claim tests the legal sufficiency of the claim, not the facts supporting it. *Babes Showclub, Jaba, Inc. v. Lair*, 918 N.E.2d 308, 310 (Ind. 2009). Review of a trial court's grant or denial of a

---

[3] Since the filing of the motion to strike, the parties to this appeal agreed to a dismissal with prejudice of the underlying action as to Mark Snedeker only. By separate order, this court dismissed Snedeker's appeal with prejudice on January 4, 2018.

motion based on a Trial Rule 12(B)(6) motion to dismiss is therefore de novo. *Id*. When reviewing a motion to dismiss, we view the pleadings in the light most favorable to the nonmoving party, with every reasonable inference construed in the nonmovant's favor. *Id*. In ruling on such a motion to dismiss, a court is required to take as true all allegations upon the face of the complaint and may only dismiss if the plaintiff would not be entitled to recover under any set of facts admissible under the allegations of the complaint. *Meyers v. Meyers*, 861 N.E.2d 704, 705 (Ind. 2007). In determining whether any facts will support the claim, we look only to the complaint and may not resort to any other evidence in the record. *Burke v. Town of Schererville*, 739 N.E.2d 1086, 1091 (Ind. Ct. App. 2000), *trans. denied*.

## Dismissal of Wrongful Death Complaint

[9] At common law, a cause of action was extinguished by the death of the plaintiff. *Durham ex rel. Estate of Wade v. U-Haul Int'l*, 745 N.E.2d 755, 758 (Ind. 2001). Because the victim was viewed as the only person wronged by a negligent killing, even a defendant whose negligence caused the plaintiff's death was insulated from liability. *Id*. This inequity gave rise to wrongful death statutes, first in England and soon thereafter in every United States jurisdiction. *Id*. An action for wrongful death is therefore purely statutory and is strictly construed. *Id*. at 759.

Our General Assembly has enacted a statute that provides an action for the wrongful death of a child and specifies who may maintain such an action as follows:

> (c) An action may be maintained under this section against the person whose wrongful act or omission caused the injury or death of a child. The action may be maintained by:
>
> > (1) the father and mother jointly, or either of them by naming the other parent as a codefendant to answer as to his or her interest;
> >
> > (2) in case of divorce or dissolution of marriage, the person to whom custody of the child was awarded; and
> >
> > (3) a guardian, for the injury or death of a protected person.
>
> (d) In case of death of the person to whom custody of a child was awarded, a personal representative shall be appointed to maintain the action for the injury or death of the child.
>
> (e) In an action brought by a guardian for an injury to a protected person, the damages inure to the benefit of the protected person.

Ind. Code § 34-23-2-1. The only provision under which Lillian could maintain an action is (c)(3) as "a guardian, for the injury or death of a protected person." *Id*.

Lillian argues she has standing to bring an action under the CWDS because at the time of Robert's death, she was Robert's "'de facto custodian'" and "qualifie[d]" as his guardian, as contemplated by the CWDS, as she was "the person who provided all of the financial, housing, clothing and other physical needs of [Robert]." Appellant's Br. pp. 9, 16. Lillian contends that the trial

court erred in dismissing her claim because it misinterpreted the meaning of the term "guardian." According to Lillian, the trial court interpreted the term in an overly narrow manner when it concluded that the term meant only a legal guardian or court-appointed guardian. Per Lillian, the court's interpretation is inconsistent with our General Assembly's intent to give phrases their plain and ordinary meaning, and that if the term is given its plain and ordinary meaning, she would qualify as Robert's guardian and have standing to bring her claim. She also argues the trial court's decision is contrary to Indiana's public policy and "results in an unjustly harsh outcome not intended by the Indiana Legislature." *Id*. at 10.

[12] The Defendants assert that the trial court properly dismissed Lillian's claim, "as [her claim] does not set forth the operative facts necessary to support her alleged 'guardian' status." Appellee's Br. p. 13. According to the Defendants, to qualify as a guardian, one must be appointed as such by the court. The Defendants contend that Lillian's interpretation of what constitutes a guardian under the CWDS improperly invites this court to expand the scope of meaning of the term, and that Lillian's claims that she qualifies as a "de facto" guardian under the CWDS fail.

[13] The interpretation of a statute is not a question of fact but one of law reserved for the courts. *Robinson v. Zeedyk,* 625 N.E.2d 1249, 1251 (Ind. Ct. App. 1993), *trans. denied.* If a statute is unambiguous, that is, susceptible to but one meaning, we must give the statute its clear and plain meaning. *See Elmer Buchta Trucking, Inc. v. Stanley*, 744 N.E.2d 939, 942 (Ind. 2001). If a statute is

susceptible to multiple interpretations, however, we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent. *Id*. We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results. *Sales v. State*, 723 N.E.2d 416, 420 (Ind. 2000).

[14] In construing a particular statute, related statutes are in pari materia and should also be considered to effectuate legislative intent. "'Where statutes address the same subject, they are in pari materia, and we harmonize them if possible.'" *Hall Drive Ins., Inc. v. City of Fort Wayne*, 773 N.E.2d 255, 257 (Ind. 2002) (citation omitted).

[15] "When interpreting the words of a single section of a statute, this court must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and purpose of the act." *State v. CSX Transp., Inc.*, 673 N.E.2d 517, 519 (Ind. Ct. App. 1996). There is a presumption that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Id*.

[16] We give undefined words in statutes their plain, ordinary, and usual meaning. *600 Land, Inc. v. Metro. Bd. of Zoning Appeals of Marion Cty.*, 889 N.E.2d 305, 309 (Ind. 2008); Ind. Code § 1-1-4-1(1) (1991). Courts may consult English language dictionaries to ascertain the plain and ordinary meaning of a statutory term. *State Bd. of Accounts v. Ind. Univ. Found.*, 647 N.E.2d 342, 347 (Ind. Ct. App. 1995), *trans. denied*. The legislative definition of certain words in one

statute, while not conclusive, is entitled to consideration in construing the same words in another statute. *Id*. at 347-48.

[17] Lillian cannot maintain an action under the CWDS unless she qualifies as Robert's guardian. *See* I.C. § 34-23-2-1. As such, at issue in this case is the meaning of the term "guardian" as used in the CWDS, which necessitates a determination of the statutory meaning of the term "guardian" to resolve the following: whether someone like Lillian, who without court intervention provides care and financial support to another, comes within the statutory definition of the term.

[18] The term "guardian" is not defined in title 34, article 23 of the Indiana Code; however, the term is defined in other parts of the code. In Title 29, Article 3 ("Guardianships and Protective Proceedings"), section 29-3-1-6 (1989) defines "guardian" as follows:

> "Guardian" means a person who is a fiduciary *and is appointed by a court* to be a guardian or conservator responsible as the court may direct for the person or the property of an incapacitated person or a minor. The term includes a temporary guardian, a limited guardian, and a successor guardian but excludes one who is only a guardian ad litem. The terms guardian and conservator are interchangeable.

(Emphasis added.) Under title 31 (addressing family and juvenile law), article 9 defines "guardian" as follows: "for purposes of the juvenile law, means a person *appointed by a court* to have the care and custody of a child or the child's estate, or both." Ind. Code § 31-9-2-49 (2014) (emphasis added).

[19] The dictionary definitions of this term are similar to the statutory definitions. The American Heritage College Dictionary defines "guardian" as "1. One that guards, watches over, or protects. 2. Law. One who is *legally* responsible for the care and management of the person or property of an incompetent or a minor." 603 (3rd ed. 2000) (emphasis added). Black's Law Dictionary defines the term as "[s]omeone who has the *legal* authority and duty to care for another's person or property, esp. because of the other's infancy, incapacity, or disability." 822 (10th ed. 2014) (emphasis added).

[20] There is a common theme in the dictionary definitions and the statutory definitions, i.e., they consistently contemplate a relationship between two people with one person having the authority or responsibility to care for the other. In addition, the statutory and legal definitions of the term "guardian" anticipate the involvement of the court in appointing a person to that capacity. Also, the phrase "protected person" used in Indiana Code section 34-23-2-1(c)(3) is defined in Indiana Code section 29-3-1-13 (1989) as "an individual for whom a guardian has been appointed or with respect to whom a protective order has been issued."[4]

---

[4] Indiana Code section 34-6-2-121.4 (2002) defines "protected person" as "a petitioner or a family or household member of the petitioner who is protected by the terms of a civil protective order issued under IC 34-26-5." However, we believe the definition provided in Indiana Code section 29-3-1-13 is the appropriate definition to apply under the circumstances of this case.

[21] Examining the statutes that define the term "guardian" and "protected person" and applying those definitions to the CWDS, it is apparent that our General Assembly intended a guardian to be someone appointed by the court to be responsible for the care of a particular person or that person's property. Lillian was never appointed by a court to be Robert's guardian. Although it is clear Lillian has sustained a loss in the death of her grandson, she simply does not meet the statutory requirement to maintain an action. It is not for us to rewrite or amend the statute. As such, she does not fall within the meaning of "guardian" as contemplated by the CWDS, and she is not entitled to maintain an action under the CWDS as Robert's guardian.

[22] Lillian further asserts that the trial court's interpretation of the term "guardian" in the CWDS, i.e., allowing for only those individuals appointed guardians by a court, is contrary to public policy. According to Lillian:

> Societal changes and the evolution of family and home structures have created situations, like here, where someone other than the parent is the person supporting the child in virtually every way. Despite providing for all of a child's financial and physical needs, such a narrow interpretation of the CWDS adopted by the Trial Court, denies those persons providing that full support of the child any interest in litigation when that child wrongfully dies.
>
> \*\*\*\*\*
>
> In a society where six percent (6%) of children live in a household maintained by grandparents, an overly narrow definition of guardian within the CWDS has the ability to affect family relationships by restricting rights from those who take on all the responsibility of a guardian and receive no benefit of that guardianship in the event of the child's wrongful death absent an

official court-issued order declaring them as a "legal" guardian.

Appellant's Br. pp. 17-18.

[23] While we may review the power of our General Assembly to act, we must not evaluate the policies adopted by it. *Kaser v. Barker*, 811 N.E.2d 930, 932 (Ind. Ct. App. 2004), *trans. denied*. "The right and responsibility to determine these public policies, and to adopt, improve, refine, and perfect legislation directed thereto, falls to the legislature, not the courts." *Id*. at 932-33. Our role is to construe and apply enactments so as to carry out legislative intent. *Id*. at 933.

# Conclusion

[24] Because Lillian was not Robert's guardian as contemplated by the CWDS, she lacked standing to bring her wrongful death claim. The trial court did not err in granting the Defendants' motion to dismiss. We affirm the decision of the trial court.

[25] Affirmed.

Barnes, J., and Brown, J., concur.