## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 26 2020, 9:36 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Zachary A. Smith
Trapp Law, LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEES

Charles P. Rice
Murphy Rice, LLP
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

S.H.,
*Appellant,*

v.

J.H. and H.H.,
*Appellees.*

October 26, 2020

Court of Appeals Case No.
20A-AD-994

Appeal from the Hamilton
Superior Court

The Honorable Jonathan M.
Brown, Judge

Trial Court Cause No.
29D02-2004-AD-634

**Najam, Judge.**

# Statement of the Case

S.H. ("Mother") appeals the trial court's judicial acknowledgement of her consent to the adoption of her minor child. Mother raises three issues for our review, which we revise and restate as the following two issues:

> 1. Whether the trial court erred when it accepted Mother's consent to the adoption.
>
> 2. Whether Indiana should require a birth mother to wait a certain period of time after the birth of her child prior to executing a consent to the child's adoption.

We affirm.

# Facts and Procedural History

On April 1, 2020, Mother, who was nineteen years old, gave birth to a child ("Child"). The next day, Mother went to an adoption agency to "talk to them more about [her] adoption plan." Tr. at 6. While there, Mother read and signed a waiver of notice and consent for adoption of Child. The notice stated that "the signing of this consent to adoption will result in a complete termination of [Mother's] parental rights" and that Mother's "consent to the adoption may not be withdrawn" unless Mother petitioned the court in a timely manner. Appellant's App. Vol. 2 at 15-16 (emphasis removed). The waiver further stated that Mother "hereby voluntarily, unconditionally, and irrevocably" consents to Child's adoption. *Id.* at 16-17 (emphasis removed).

[4]     In addition, the notice provided that Mother: was not under the influence of any alcohol or drugs; had had "enough time to carefully consider whether or not adoption" was in her own bests interests; was "fully aware of all implications of" the consent; and had "chosen not to be represented by an attorney." *Id*. at 15-16. Mother initialed each paragraph of the consent form and signed it at 7:33 p.m. on April 2.

[5]     At the same time, Mother also read and signed a relinquishment of parental rights and consent to adoption checklist. In that checklist, Mother acknowledged that she was "not under the influence of any drug, medication, or any substance" that might affect her judgment, that she had no obligation to proceed with an adoption, that she "may take more time in order to give her decision more thought," and that she had the right to consult with an attorney. *Id*. at 21. At 8:39 p.m. that evening, J.H. and. H.F. (collectively, "Adoptive Parents") filed a petition to adopt Child. Adoptive Parents attached to their petition a copy of the documents Mother had signed at the adoption agency.

[6]     At 9:00 a.m. on April 3, the court held a telephonic hearing on Mother's consent to the adoption. Mother appeared at that hearing *pro se*. During the hearing, Mother agreed that she had "understood" each paragraph and that no one had pressured her "in any manner" to sign the documents. Tr. at 7. Mother also stated that she understood that, if the court accepted her consent, she would "have no period of time to withdraw" that consent. *Id*. at 8. Mother then reiterated that she had signed the consent forms voluntarily and that she still wished to proceed with the hearing.

[7]     Following that hearing, the court issued an order in which it found that "there has been no showing of duress or force" concerning the signing of either document. Appellant's App. Vol. 2 at 7. The court also found that Mother understood "the consequences of the signing of" the consent forms and that she had freely and voluntarily signed the documents. *Id*. Accordingly, the court entered a judicial acknowledgment accepting Mother's consent to the adoption. The court then made "an express determination that there is no just reason for delay and expressly direct[ed] entry of final and appealable judgment as to" its acknowledgment of Mother's consent. *Id*. at 8.

[8]     Thereafter, on April 27, Mother, while represented by counsel, filed a notice with the trial court in which she "formally withd[rew] her consent to the adoption" of Child. *Id*. at 27. In support of her motion, Mother stated that, "shortly after" April 2, she had informed the adoption agency of her desire to withdraw consent. *Id*. At a hearing on Mother's motion, Mother argued that she had signed the forms under duress. Following the hearing, the court found that, because it had previously accepted Mother's consent, Mother's motion was "untimely filed." *Id*. at 9. This appeal ensued.

# Discussion and Decision

## *Issue One: Validity of Consent to Adoption*

[9]     Mother appeals the court's judicial acknowledgement accepting her consent to the adoption of Child.[1]  As our Supreme Court has recently stated:

> In family law matters, we generally give considerable deference to the trial court's decision because we recognize that the trial judge is in the best position to judge the facts, determine witness credibility, get a feel for the family dynamics, and get a sense of the parents and their relationships with their children. Accordingly, when reviewing an adoption case, we presume that the trial court's decision is correct, and the appellant bears the burden of rebutting this presumption.
>
> The trial court's findings and judgment will be set aside only if they are clearly erroneous.  A judgment is clearly erroneous when there is no evidence to support the findings or the findings fail to support the judgment.  We will not reweigh evidence or assess the credibility of witnesses.  Rather, we examine the evidence in the light most favorable to the trial court's decision.

*J.W. v. D.F. (In re E.B.F.)*, 93 N.E.3d 759, 762 (Ind. 2018) (cleaned up).

[10]    On appeal, Mother asserts that the court erred when it accepted her consent to Child's adoption because her consent was not voluntary.  It is well settled that,

---

[1]  Adoptive Parents have filed a motion to dismiss Mother's appeal from the April 27 order because that order was neither a final order nor an interlocutory appeal as of right and because Mother did not seek to have it certified as an interlocutory order.  We have granted that motion in a separate order.  However, because in substance Mother's appeal is from the court's April 3 order, our grant of Adoptive Parents' motion to dismiss has no effect on our resolution of this appeal.

for a parent's consent to an adoption to be valid, it must be voluntary. *See K.F. v. B.B.*, 145 N.E.3d 813, 824 (Ind. Ct. App. 2020)*, trans. denied*. A consent is voluntary if it is "an act of the parent's own volition, free from duress, fraud, or any other consent-vitiating factor, and if it is made with knowledge of the essential facts." *Bell v. Doe (In re Adoption of A.R.H.)*, 654 N.E.2d 29, 32 (Ind. Ct. App. 1995)).

[11] Here, Mother contends that she "did not understand that her consent would be irrevocable[.]" Appellant's Br. at 9. In addition, Mother asserts that the trial court "failed to inquire" into whether Mother was under the influence of any drugs as a result of giving birth at the time she executed the consent. *Id*. at 11. And Mother contends that she only had a "limited time" following the birth of Child to execute her consent such that she did not have time to contact an attorney. Appellant's Br at 14. Accordingly, Mother maintains that her consent was not voluntary.

[12] The evidence demonstrates that, following her discharge from the hospital, Mother went to the adoption agency to talk "more" about her adoption plan for Child. Tr. at 6. While at the agency, Mother read and signed a consent form. By signing that form, Mother acknowledged that she "voluntarily, unconditionally, and irrevocably" consented to Child's adoption. Appellant's App. Vol. 2 at 16-17. Mother also agreed that she was not under the influence of any drugs, that she had had "enough time" to consider the adoption, and that she had "chosen" not to be represented by an attorney. *Id*. at 15-16.

[13]    In addition, Mother also signed a checklist in which she agreed that she was not under the influence of any medication that might affect her judgment, that she "may take more time" to consider her options, and that she had the right to consult an attorney. *Id*. at 21. Further, at a hearing on Mother's consent, Mother acknowledged that she had understood each paragraph of the consent forms. Mother understood that, if the court accepted her consent, she would "have no period of time to withdraw" that consent. Tr. at 8. And Mother twice informed the court that she had signed the documents voluntarily and that she wanted to procced with the hearing. *See id*. at 7-9. That evidence supports the trial court's findings that Mother understood the consequences of signing the consent forms and that she had signed the forms voluntarily. The trial court did not err when it accepted Mother's consent to Child's adoption.

### *Issue Two: Waiting Period Prior to Consent to Adoption*

[14]    Mother next asks us to impose a waiting period between the birth of a child and the execution of a consent to an adoption. Specifically, Mother states that "Indiana is only one of twenty (20) States that allow biological mothers to sign consents for adoptions as soon as they have the baby." Appellant's Br. at 15. And Mother maintains that, had she been required to wait a certain period of time before she could sign the consent forms, she "would have been better able to assess her situation." *Id*. at 17. Accordingly, Mother asks us to require "a reasonable waiting period in line with the majority of States between giving birth and signing an irrevocable consent[.]" *Id*.

However, the right and responsibility to determine public policies, and to adopt, improve, refine, and perfect legislation directed thereto, falls to the legislature, not the courts. *Parsley v. MGA Fam. Grp., Inc.*, 103 N.E.3d 651, 657 (Ind. Ct. App. 2018). Our role is to construe the statutes and apply enactments so as to carry out legislative intent. *See id.* And, here, the Indiana legislature has provided that a biological mother may execute a consent to an adoption "at any time after the birth of the child[.]" Ind. Code § 31-19-9-2(a) (2020). Regardless of the wisdom of that policy, it is clear that we have neither the responsibility nor the authority to add a waiting period to the statute where none exists. As such, we decline Mother's request for us to require a waiting period before a mother may sign a consent to an adoption.

In sum, we affirm the trial court's judicial acknowledgment accepting Mother's consent to the adoption of Child.

Affirmed.

Bradford, C.J., and Mathias, J., concur.