

FILED

May 30 2025, 9:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Court of Appeals of Indiana

Estate of Judah Morgan,
by Jenna Hullett, Personal Representative,

*Appellant-Plaintiff*

v.

Alan Morgan, Mary Yoder, and
Indiana Department of Child Services,

*Appellees-Defendants*

---

May 30, 2025

Court of Appeals Case No.
24A-CT-2513

Appeal from the Hendricks Superior Court

The Honorable Rhett M. Stuard, Judge

Trial Court Cause No.
32D02-2301-CT-4

---

## Opinion by Judge Weissmann
Judges May and Scheele concur.

**Weissmann, Judge.**

[1] The Indiana Department of Child Services (DCS) returned four-year-old Judah Morgan to the care of his parents. In the six months that followed, Judah's parents neglected, abused, and tortured Judah, eventually killing him. Judah's relative and former foster parent, Jenna Hullett, was then appointed as Personal Representative of Judah's Estate. In that capacity, Hullett timely filed a complaint against DCS, alleging its wrongful acts or omissions proximately caused Judah's neglect, abuse, torture, and death. Hullett specifically sought damages under Indiana's Child Wrongful Death Statute (CWDS) but later amended her complaint to add specific requests for damages under Indiana's General Wrongful Death Statute (GWDS) and Survival Statute.

[2] On DCS's motion, the trial court dismissed Hullett's amended complaint. The court concluded that Hullett lacked standing to bring a claim under the CWDS because that statute only applies to actions filed by parents and guardians of protected persons. The court also found that Hullett's claims under the GWDS and Survival Statute were time-barred because they were added after the two-year deadlines applicable to those statutes. We affirm the dismissal of Hullett's claim under the CWDS, agreeing that she lacked standing. But we reverse the

dismissal of Hullett's claims under the GWDS and Survival Statute, concluding the amendments that specifically referenced those statutes arose from the same conduct, transaction, or occurrence alleged in Hullett's timely-filed complaint and, thus, related back to the date of that filing.

## Facts

Judah was born drug-positive in June 2017, shortly after DCS substantiated allegations that his parents, Alan Morgan and Mary Yoder, had abused and neglected Judah's older brother. DCS removed Judah from Alan and Mary's care before he ever left the hospital, and he was soon found to be a child in need of services (CHINS). For most of his CHINS case, Judah was placed in foster care with Hullett. But in April 2021, DCS returned Judah to Alan and Mary's care on a "Trial Home Visit" basis. App. Vol. II, p. 5. Roughly three months later, DCS petitioned to close Judah's CHINS case. And less than four months after that, Judah was killed. Alan eventually pleaded guilty to Judah's murder, and Mary pleaded guilty to neglect resulting in Judah's death.

Hullett was later appointed as Personal Representative of Judah's Estate. In that capacity, she sued Alan for intentionally beating, torturing, and murdering Judah. Hullett then timely filed an amended complaint that also asserted a

"Tort Claim" against DCS.[1] *Id.* at 60. In pertinent part, this First Amended Complaint alleged and prayed as follows:

> 30.    For the six-month period prior to Judah's death, Judah was savagely beaten, tortured, abused and neglected by his parents, Mary Yoder and Alan Morgan. This six-month period overlapped the period from April 7, 2021 until June 27, 2021 when DCS had legal custody of Judah but had placed Judah in a [trial home visit].
>
>                                   ***
>
> 39.    As a direct and proximate result of the reckless, careless, negligent, and wrongful acts and omissions of DCS, Judah Morgan was neglected, beaten, tortured and eventually murdered on October 11, 2021.
>
> WHEREFORE, the Plaintiff requests judgment against DCS and seeks an award of all damages, including attorneys' fees, permitted under the Indiana Child Wrongful Death Statute (I.C. § 34-23-2-1 et seq.), as well [as] all other just and proper relief.

*Id.* at 57, 60.

[5] DCS moved to dismiss Hullett's First Amended Complaint under Indiana Trial Rule 12(B)(6), arguing that Hullett lacked standing to bring a wrongful death claim under the CWDS. Hullett responded with an unopposed motion to file a Second Amended Complaint, which the trial court granted. In her Second Amended Complaint, Hullett asserted a "Survival Claim" and "Wrongful

---

[1] Hullett also added Mary as a co-defendant to her intentional tort claim against Alan. That claim remains pending.

Death Claims" against DCS. *Id.* at 76, 80. Her Survival Claim cited the Survival Statute (Ind. Code § 34-9-3-4) and requested "all damages allowed by law." *Id.* at 76. Meanwhile, her Wrongful Death Claims specifically requested damages under the GWDS (Ind. Code § 34-23-1-1) and CWDS (Ind. Code § 34-23-2-1).

[6] DCS soon moved to dismiss Hullett's Second Amended Complaint under Trial Rule 12(B)(6) as well. As to Hullett's Survival Claim, DCS argued that the claim was time-barred under the two-year statute of limitations for personal injury claims. As to her Wrongful Death Claim under the GWDS (hereinafter, "GWDS Claim"), DCS argued that the claim was time-barred by the GWDS's own two-year filing requirement. And as to her Wrongful Death Claim under the CWDS (hereinafter, "CWDS Claim"), DCS again argued that Hullett lacked standing.

[7] The trial court agreed with DCS's arguments and dismissed Hullett's Second Amended Complaint without prejudice. Hullett then filed a Third Amended Complaint as a matter of right. In her Third Amended Complaint, Hullett asserted the same claims as in her prior complaint; however, she specifically alleged that any limitation period was tolled by DCS's fraudulent concealment of relevant facts.

[8] DCS promptly moved to dismiss Hullett's Third Amended Complaint under Trial Rule 12(B)(6), reiterating its previous arguments. The trial court granted the dismissal and incorporated by reference its order dismissing Hullett's

Second Amended Complaint. The court also expressly directed the entry of judgment under Trial Rule 54(B).

## Discussion and Decision

[9] Hullett appeals the Trial Rule 12(B)(6) dismissal of her complaint against DCS, arguing that her complaint stated viable claims for relief under the CWDS, GWDS, and Survival Statute. Specifically, Hullett challenges the trial court's conclusions that she lacked standing to bring her CWDS Claim and that her GWDS Claim and Survival Claim were time-barred. Addressing these challenges in reverse order, we conclude that Hullett timely filed her Survival Claim and GWDS Claim but lacked standing to bring her CWDS Claim. We therefore reverse in part and affirm in part.

## I. Standard of Review

[10] Trial Rule 12(B)(6) permits a claim's dismissal for "[f]ailure to state a claim upon which relief can be granted." A motion to dismiss under this rule "tests the legal sufficiency of the claim, not the facts supporting it." *Thornton v. State*, 43 N.E.3d 585, 587 (Ind. 2015) (quoting *Kitchell v. Franklin*, 997 N.E.2d 1020, 1025 (Ind. 2013)). "When ruling on a motion to dismiss, the court must 'view the pleadings in the light most favorable to the nonmoving party, with every reasonable inference construed in the non-movant's favor.'" *Id.* (quoting *Kitchell*, 997 N.E.2d at 1025).

[11] We review a Trial Rule 12(B)(6) dismissal de novo, "giving no deference to the trial court's decision." *Bellwether Props., LLC v. Duke Energy Ind., Inc.*, 87 N.E.3d

462, 466 (Ind. 2017). "We will not affirm such a dismissal 'unless it is apparent that the facts alleged in the challenged pleading are incapable of supporting relief under any set of circumstances.'" *Thornton*, 43 N.E.3d at 587 (quoting *City of E. Chicago, Ind. v. E. Chicago Second Century, Inc.*, 908 N.E.2d 611, 617 (Ind. 2009)).

## II.  Overview of Pertinent Statutes

[12]  "[A]ctions for personal injury did not survive the death of the injured party [at common law]," and actions for wrongful death did not exist. *Ed Wiersma Trucking Co. v. Pfaff*, 643 N.E.2d 909, 911 (Ind. Ct. App. 1994), *opinion adopted*, 678 N.E.2d 110 (Ind. 1997). Such actions are therefore "creatures of statute" in Indiana, and their statutes must be "strictly construed." *Id.* (discussing wrongful death actions); *see Foster v. Evergreen Healthcare, Inc.,* 716 N.E.2d 19, 25 (Ind. Ct. App. 1999) (discussing survival actions). This case implicates Indiana's Survival Statute, GWDS, and CWDS.

[13]  The Survival Statute authorizes the personal representative of a decedent's estate to maintain an action against a person whose wrongful acts or omissions caused personal injuries to the decedent during their life. Ind. Code § 34-9-3-4(b). The statute permits recovery of "all damages" resulting from those personal injuries before decedent's death, and "[t]he damages inure to the exclusive benefit of the decedent's estate." *Id.* But the statute only applies if the decedent "subsequently die[d] from causes other than those personal injuries." Ind. Code § 34-9-3-4(a). If the injuries caused the decedent's death, Indiana's

wrongful death statutes provide the proper avenues for relief. *See Atterholt v. Robinson*, 872 N.E.2d 633, 641 (Ind. Ct. App. 2007).

[14] The GWDS authorizes the personal representative of a decedent's estate to maintain an action against a person whose wrongful acts or omissions caused the decedent's death. Ind. Code § 34-23-1-1. The statute, however, distinguishes between decedents who leave behind a spouse, dependent children, or dependent next of kin and those who do not. *See SCI Propane, LLC v. Frederick*, 39 N.E.3d 675, 678 (Ind. 2019). For the latter category of decedents, which includes children, the GWDS permits recovery of only "medical, hospital, funeral and burial expenses" and "costs and expense of [estate] administration, including attorney fees." Ind. Code § 34-23-1-1. Such damages inure to the benefit of the service providers and the personal representative, respectively.[2] *Id.*

[15] The CWDS, in turn, operates as an "amplification" of the relief available for child decedents under the GWDS. *Angel Shores Mobile Home Park, Inc. v. Crays*, 78 N.E.3d 718, 727 (Ind. Ct. App. 2017) (citing *McCabe v. Comm'r, Ind. Dep't of Ins.*, 949 N.E.2d 816, 820 (Ind. 2011)). Unlike the GWDS, which restricts recovery to a child's death-related expenses (*i.e.*, medical, hospital, funeral, burial, and estate administration expenses), the CWDS permits recovery for a parent's "loss of the child's services" and "loss of the child's love and

---

[2] For decedents who leave behind a spouse, dependent children, or dependent next of kin, the GWDS permits recovery of the decedent's "lost earnings," among other things, and such damages inure to the benefit of the decedent's spouse, dependent children, or dependent next of kin. Ind. Code § 34-23-1-1.

companionship."[3] Ind. Code § 34-23-2-1(f)(1)-(2). Such damages inure to the benefit of the child's parents or, if the child was not survived by a parent, to a custodial grandparent.[4] Ind. Code § 34-23-2-1(i).

## III. Timeliness of Hullett's Survival Claim

Hullett argues that the trial court erred by concluding her Survival Claim was time-barred. A claim under the Survival Statute is subject to a two-year statute of limitations. Ind. Code § 34-11-2-4 (a)(1) ("An action for . . . injury to person . . . must be commenced within two (2) years after the cause of action accrues.").

Here, there is no dispute that Hullett filed her Third Amended Complaint more than two years after Judah's death. But Trial Rule 15(C) provides: "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Thus, Hullett contends the Survival Claim she asserted in her Third Amended

---

[3] Additionally, the CWDS permits recovery of "the reasonable expense of psychiatric and psychological counseling incurred by a surviving parent or minor sibling of the child that is required because of the death of the child," and "uninsured debts of the child, including debts for which a parent is obligated on behalf of the child." Ind. Code § 34-23-2-1(f)(3)(C)-(D).

[4] Though not applicable to this case, Indiana also has an Adult Wrongful Death Statute (AWDS). Ind. Code § 34-23-1-2. The AWDS amplifies the relief available under the GWDS for adult decedents who, like children, do not leave behind a spouse, dependent children, or dependent next of kin. *McCabe*, 949 N.E.2d at 820. Specifically, the AWDS permits recovery for loss of the adult's "love and companionship." Ind. Code § 34-23-1-2(c)(3)(B). But such damages only inure to the benefit of a nondependent parent or nondependent child of the adult. Ind. Code § 34-23-1-2(d). If no such nondependent family members exist, recovery is limited to the death-related damages provided for under the GWDS.

Complaint related back to the Tort Claim she asserted in her timely-filed First Amended Complaint. We agree.

[18] "Indiana is a notice pleading state and requires that pleadings contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief[.]'" *Bayer Corp. v. Leach*, 147 N.E.3d 313, 315 (Ind. 2020) (quoting Trial Rule 8(A)(1)). "Plaintiffs need not 'set out in precise detail the facts upon which the claim is based, . . . [only] the operative facts necessary to set forth an actionable claim.'" *Id.* (quoting *Trail v. Boys & Girls Club of Nw. Ind.*, 845 N.E.2d 130, 135 (Ind. 2006)). "This means that although 'highly desirable,' a precise legal theory in a pleading . . . 'is not required.'" *Id.* (quoting *State v. Rankin*, 294 N.E.2d 604, 606 (Ind. 1973)).

[19] The operative facts of Hullett's First Amended Complaint expressly covered "a six-month period" during which "Judah was savagely beaten, tortured, abused and neglected by his parents." App. Vol. II, p. 57. According to the complaint, "DCS had legal custody of Judah" for nearly three of these months "but had placed Judah in a [trial home visit]." *Id.* Hullett's Tort Claim therefore alleged that, "[a]s a direct and proximate result of the reckless, careless, negligent, and wrongful acts and omissions of DCS, Judah Morgan was neglected, beaten, tortured and eventually murdered." *Id.* at 60. The conduct, transaction, or occurrence represented by these operative facts is broad enough to give rise to actionable claims both for injuries that caused Judah's death (*i.e.*, a wrongful death claim) and for those that did not (*i.e.*, a survival claim).

[20]     Still, DCS argues that Hullett's First Amended Complaint only stated a wrongful death claim against DCS because the Tort Claim's prayer for relief specifically requested damages under the CWDS and did not mention the Survival Statute. We disagree. "A complaint must be construed according to its general scope and tenor, as appears from the averments, and the prayer will not control and determine its validity." *KS&E Sports v. Runnels*, 72 N.E.3d 892, 902 (Ind. 2017) (quoting *W. Muncie Strawboard Co. v. Slack*, 72 N.E. 879, 880 (Ind. 1904)). Though Hullett specifically requested damages under the CWDS, she also prayed for "all other just and proper relief." App. Vol. II, p. 60. Considering the operative facts of Hullett's Tort Claim with this general prayer, DCS was on notice that Hullett sought all available damages for Judah's injuries.

[21]     DCS also argues that, by statutory definition, a survival claim and a wrongful death claim cannot arise out of the same "conduct, transaction, or occurrence" for relation-back purposes under Trial Rule 15(C). Again, we disagree. Under Indiana's notice pleading standards, "a party is not required to adopt a theory of the case at the outset." *Cahoon v. Cummings*, 734 N.E.2d 535, 542 (Ind. 2000). "Rather, it is sufficient to plead the operative facts of the case so the defendant is put on notice as to the evidence that will be presented at trial." *Id.* So long as the pleading provides such notice, "there is no procedural bar to pursuing both a wrongful death and survival [claim]." *Id.*

[22]     Because the Survival Claim that Hullett asserted in her Third Amended Complaint arose out of the same conduct, transaction, or occurrence as the Tort

Claim she asserted in her First Amended Complaint, the Survival Claim related back to the date of the First Amended Complaint under Trial Rule 15(C) and was timely filed.

## IV. Timeliness of Hullett's GWDS Claim

[23] Hullett also argues that the trial court erred by concluding her GWDS Claim was time-barred. The GWDS explicitly states that a wrongful death action "shall be commenced by the personal representative of the decedent within two (2) years." Ind. Code § 34-23-1-1; *see generally Alldredge v. Good Samaritan Home, Inc.*, 9 N.E.3d 1257, 1261 (Ind. 2014) (observing that "the two-year period in the [GWDS] is not a statute of limitation but a condition precedent to the existence of the claim" (internal quotation marks omitted)).

[24] Hullett contends that, under Trial Rule 15(C), the GWDS Claim she asserted in her Third Amended Complaint related back to the Tort Claim she asserted in her timely-filed First Amended Complaint. We agree for essentially the same reasons articulated above in our discussion of Hullett's Survival Claim. The conduct, transaction, or occurrence represented by the operative facts of Hullett's First Amended Complaint gave rise to an actionable claim for injuries that caused Judah's death. And the Tort Claim's specific prayer for damages under the CWDS did not preclude recovery of "all other just and proper relief," including damages under the GWDS. App. Vol. II, p. 60; *see KS&E Sports v. Runnels*, 72 N.E.3d 892, 902 (Ind. 2017).

DCS argues that "a plaintiff[] may not . . . use Trial Rule 15(C) to relate [a] claim back to a timely filed wrongful death claim." Appellee's Br., p. 17. But the decision on which DCS relies for this proposition, *Davis-Brumley v. Fair Oaks Farms, LLC*, 230 N.E.3d 364 (Ind. Ct. App. 2024), does not support it.

In *Davis-Brumley*, a person filed a wrongful death claim in her capacity as mother of the decedent exactly two years after the decedent's death. That same day, the person petitioned to be appointed as personal representative of the decedent's estate, and the next day—now more than two years after decedent's death—the person was so appointed. The person then sought to amend her complaint under Trial Rule 15(C) to assert the wrongful death claim in her capacity as personal representative. But this Court held she could not. Among other things, we found Trial Rule 15(C) "inapplicable" because the person sought to "relate back her [legal] status" as personal representative, not some aspect of her "underlying claims." *Id.* at 370.

By contrast, in *Johnson v. Parkview Health Sys., Inc.*, 801 N.E.2d 1281 (Ind. Ct. App. 2004), a person filed a wrongful death claim in her capacity as personal representative of the decedent's estate within two years of the decedent's death. But more than two years after the decedent's death, the person sought to amend her complaint under Trial Rule 15(C) to assert the wrongful death claim in her capacity as the decedent's mother. This Court permitted the amendment, observing that it would "not change her legal status" but "only the designation of her legal status, with which she was appropriately endowed at the time she initiated the action." *Id.* at 1287.

Here, there is no dispute that Hullett was appointed as Personal Representative of Judah's Estate within two years after his death. Indeed, she specifically filed her First Amended Complaint in that capacity, and her Third Amended Complaint did not seek to change her legal status. Rather, the GWDS Claim Hullett asserted in her Third Amended Complaint sought to specify "other just and proper relief" for the Tort Claim she asserted in her First Amended Complaint. *Davis-Brumley* is therefore inapplicable.

Because the GWDS Claim that Hullett asserted in her Third Amended Complaint arose out of the same conduct, transaction, or occurrence as the Tort Claim she asserted in her First Amended Complaint, the GWDS Claim related back to the date of the First Amended Complaint under Trial Rule 15(C) and was timely filed.

## V. Standing to Bring Claim Under CWDS

Finally, Hullett argues that the trial court erred by concluding she lacked standing to bring her CWDS Claim. In addition to amplifying the relief available for child decedents under the GWDS, the CWDS "amplifies the scope of persons who can pursue a wrongful death claim[.]" *Angel Shores Mobile Home Park, Inc. v. Crays*, 78 N.E.3d 718, 727 (Ind. Ct. App. 2017). In pertinent part, the CWDS provides:

> (c)    An action may be maintained under this section against the person whose wrongful act or omission caused the injury or death of a child. **The action may be maintained by:**

> (1) the father and mother jointly, or either of them by
> naming the other parent as a codefendant to answer as to
> his or her interest;
>
> (2) in case of divorce or dissolution of marriage, the person
> to whom custody of the child was awarded; and
>
> **(3) a guardian, for the injury or death of a protected
> person.**
>
> (d) In case of death of the person to whom custody of a child
> was awarded, a personal representative shall be appointed to
> maintain the action for the injury or death of the child.

Ind. Code § 34-23-2-1 (emphasis added).

[31] Hullett contends that, as personal representative of Judah's Estate, she had standing to bring her CWDS Claim under the statute's guardian provision (Ind. Code § 34-23-2-1(c)(3)). She relies on *Parsley v. MGA Family Grp., Inc.*, 103 N.E.3d 651 (Ind. Ct. App. 2018), in which this Court determined that the term "guardian," as used in the CWDS, refers to "someone appointed by the court to be responsible for the care of a particular person or that person's property." *Id.* at 656 (finding a de facto custodian does not qualify). Because Hullett was court-appointed to be responsible for Judah's property, she claims to qualify as a "guardian" under *Parsely*.

[32] But Hullett overlooks that the CWDS's guardian provision only applies in actions "for the injury or death of a **protected person**." Ind. Code § 34-23-2-1(c)(3) (emphasis added). In *Parsley*, this Court applied the Indiana Probate Code's definition of "protected person" to the CWDS's guardian provision and

found the term meant: "an individual for whom a guardian has been appointed or with respect to whom a protective order has been issued." 103 N.E.3d at 656 (quoting Ind. Code § 29-3-1-13). Judah's Estate is not an individual; thus, it cannot be a "protected person" under the CWDS's guardian provision no matter how "guardian" is defined.

[33] We ultimately agree with this Court's observations in *Johnson v. Parkview Health Sys., Inc.*, 801 N.E.2d 1281 (Ind. Ct. App. 2004):

> When an action is brought under the CWDS, it must be brought by the decedent's parents, by the parent who has custody of the child following a divorce or dissolution of marriage, or the guardian of the child. **The personal representative of the decedent's estate may not maintain the cause of action except upon the death of the person to whom custody of the child was awarded**. No other result may be obtained according to the language employed by our legislature.

*Id.* at 1285 (Ind. Ct. App. 2004) (emphasis added); *see* Ind. Code § 34-23-2-1(d). Hullett therefore lacked standing to bring her CWDS Claim.

## Conclusion

[34] We find that Hullett timely-filed her Survival Claim and GWDS Claim and, therefore, reverse the trial court's dismissal of those two claims under Trial Rule 12(B)(6). But concluding that Hullett lacked standing to bring her CWDS Claim, we affirm the court's dismissal of that claim under the same rule.

Affirmed in part and reversed in part.

May, J., and Scheele, J., concur.

ATTORNEYS FOR APPELLANT

Charles P. Rice
Patrick D. Murphy
Murphy Rice, LLP
Mishawaka, Indiana


ATTORNEYS FOR APPELLEE
INDIANA DEPARTMENT OF CHILD SERVICES

Theodore E. Rokita
Attorney General of Indiana

David A. Arthur
Deputy Attorney General
Indianapolis, Indiana